RECORD NO. 14-2266

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

———————————

MERYEM BENTAOUS,
Individually and on behalf of others similarly situated,

*Plaintiff - Appellant,*

v.

ASSET ACCEPTANCE LLC;
FULTON FRIEDMAN & GULLACE, LLP.,

*Defendants - Appellees.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

———————————

**OPENING BRIEF OF APPELLANT**

———————————

E. David Hoskins
Max F. Brauer
THE LAW OFFICES OF DAVID HOSKINS, LLC
Suite 400
16 East Lombard Street
Baltimore, MD 21210
(410) 662-6500

*Counsel for Appellant*
*Meryem Bentaous*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-2266__        Caption: __Meryem Bentaous. v. Asset Acceptance, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Meryem Bentaous__
(name of party/amicus)


who is _____ __Appellant__ _____ , makes the following disclosure:
(appellant/appellee/amicus)


1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                       ☐ YES ☑ NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ E. David Hoskins _____    Date: _____ 11/19/14 _____

Counsel for: Appellant Meryem Bentaous _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ 11/19/14 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

SEE ATTACHED

/s/ E. David Hoskins _____    11/19/14 _____
          (signature)                                    (date)

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................ iii

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................................... 2

STATEMENT OF THE CASE ............................................................... 2

SUMMARY OF ARGUMENT ............................................................. 14

ARGUMENT ............................................................................. 17

  A.   STANDARD OF REVIEW .......................................................... 17

  B.   DISCUSSION OF ISSUES .......................................................... 18

      1.   A PARTY MAY NOT ADOPT A POSITION IN A PENDING CASE THAT IS INCONSISTENT WITH A POSITION IT HAS TAKEN IN PRIOR LITIGATION ........................................... 18

          a.   Defendants Are Seeking To Adopt an Inconsistent Position........................................................ 20

          b.   The Prior Inconsistent Position Has Been Accepted by the District Court of Maryland........................... 22

          c.   Defendants Intentionally Misled the District Court of Maryland to Gain an Unfair Advantage ................ 24

      2.   A PARTY MAY NOT ESTABLISH A CONTRACT WITHOUT PROOF OF ACCEPTANCE OF THE CONTRACT'S ALLEGED TERMS AND CONDITIONS.............. 31

i

a.      There Is No Evidence in The Record That Ms. Bentaous Accepted the Terms and Conditions in an Electronic Environment ................................................................29

b.      The Record Does Not Establish That Ms. Bentaous Was Mailed the Terms and Conditions ...........................................32

CONCLUSION ..........................................................................................34

REQUEST FOR ORAL ARGUMENT ....................................................35

CERTIFICATE OF COMPLIANCE ........................................................36

CERTIFICATE OF SERVICE .................................................................37

ADDENDUM .............................................................................................38

# TABLE OF AUTHORITIES

## CASES

Page

Allen v. Zurich Ins. Co.,
667 F.2d 1162 (4th Cir. 1982) ........................................................... 18

Freyermuth v. Credit Bureau Services, Inc.,
248 F.3d 767 (8th Cir. 2001) ............................................................... 3

Green Tree Financial Corp.-Alabama v. Randolph,
531 U.S. 79, 121 S. Ct. 513 (2000) .................................................... 1

John S. Clark Co. v. Faggert & Frieden, P.C.,
65 F.3d 26 (4th Cir. 1995) ............................................................ 18, 19

Kimber v. Federal Financial Corp.,
668 F. Supp. 1480 (M.D. Ala. 1987) ............................................... 2, 3

Lowery v. Stovall,
92 F.3d 219 (4th Cir. 1996) ............................................................... 19

McCollough v. Johnson, Rodenburg & Lauinger, LLC,
637 F.3d 939 (9th Cir. 2011) ........................................................... 3, 4

MicroStrategy, Inc. v. Lauricia,
268 F.3d 244 (4th Cir. 2001) ............................................................ 17

In re Mutual Funds Investment Litigation,
681 F. Supp. 2d 622 (D. Md. 2010) aff'd sub nom. Steinberg v. Janus
Capital Mgt., LLC, 457 Fed. Appx. 261 (4th Cir. 2011) ................ 19

In re Naranjo,
768 F.3d 332 (4th Cir. 2014) ............................................................ 17

Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.,
380 F.3d 200 (4th Cir. 2004) ............................................................ 17

Scott v. Family Dollar Stores, Inc.,
    733 F.3d 105 (4th Cir.2013) ........................................................ 17

Steinberg v. Janus Capital Mgt., LLC,
    457 Fed. Appx. 261 (4th Cir. 2011) .......................................... 19

Teledyne Indus., Inc. v. NLRB,
    911 F.2d 1214 (6th Cir. 1990) .................................................... 18

Tenneco Chemicals, Inc. v. Wm. T. Burnett & Co.,
    691 F.2d 658 (4th Cir. 1982) ............................................... 18, 19

Wallace v. Capital One Bank,
    168 F. Supp. 2d 526 (D. Md. 2001)............................................. 3

Whiting-Turner Contracting Co. v. Liberty Mutual Insurance Co.,
    912 F. Supp. 2d 321 (D. Md. 2012).......................................... 33

Zinkand v. Brown,
    478 F.3d 634 (4th Cir. 2007) ..................................................... 10

## STATUTES

9 U.S.C. § 4.12 ........................................................................................ 33
9 U.S.C. § 16(a)(3) .................................................................................... 1
15 U.S.C. § 1692e ..................................................................................... 3
15 U.S.C. § 1692e(2)(A) .......................................................................... 3
15 U.S.C. § 1693, et seq ........................................................................... 1
15 U.S.C. § 7001(a) ................................................................................ 29
15 U.S.C. § 7001(b) ................................................................................ 29
28 U.S.C. § 1331 ....................................................................................... 1
28 U.S.C. § 1961 ............................................................................... 15, 21

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq ............. 1
Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann.,
    Com. Law § 14-201 et seq. .................................................................. 1
Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law
    § 13-101 et seq ...................................................................................... 1

The Electronic Records and Signatures in Global and National Commerce
(E-Sign) Act, 15 U.S.C. § 7001, et seq ........................................................29

Md. Code, Com. Law § 2-725 ..........................................................................4
Md. Code Ann., Com. Law § 13-101 et seq ......................................................1
Md. Code Ann., Com. Law § 14-201 et seq ......................................................1
Md. Code, Com. Law § 21-101(o).....................................................................30
Md. Code, Com. Law § 21-107(a)......................................................................31
Md. Code, Com. Law § 21-107(c)......................................................................31
Md. Code, Com. Law § 21-108 ..........................................................................29
Utah Code Ann. § 15-14 ..................................................................15, 21, 26

Utah Code Ann. § 46-4-102(14) ........................................................................30
Utah Code Ann. § 46-4-202(1) ..........................................................................31
Utah Code Ann. § 46-4-202(3) ..........................................................................31
Utah Code Ann. § 46-4-203(1) ..................................................................29, 30

UETA § 2 .............................................................................................................30
UETA § 2(14) ......................................................................................................30
UETA § 2 cmt. 7 ..................................................................................................30
UETA § 8(a)..........................................................................................................30
UETA § 9 cmt. 5 ..................................................................................................30
UETA § 9(A).........................................................................................................29
UETA § 14 cmt. 2 ................................................................................................30

## RULES

Md. R. 3-306    ................................................................................................4, 5
Md. R. 3-306(d)(2)........................................................................................8, 20
Md. R. 1-304    ....................................................................................................11
Md. R. 3-306(d)(2)(A) .........................................................................15, 20, 25
Md. R. 3-306(d)(2)(B) ..........................................................................................5
Md. R. 3-506 .................................................................................................22, 24
Md. R. 3-506(b) ..................................................................................................24
Tex. R. Evid. 902.10(b)........................................................................................11

## JURISDICTIONAL STATEMENT

This appeal is taken from an order issued by the Honorable J. Frederick Motz granting Defendant Asset Acceptance, LLC's ("Asset Acceptance") Motion to Compel Arbitration and to Dismiss this Case and Defendant, Fulton Freidman & Gullace, LLP's ("Fulton Freidman") Joinder in Asset Acceptance's Motion to Compel Arbitration and to Dismiss this Case of the District of Maryland.

The Class Action Complaint filed by Ms. Bentaous alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 et seq., and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 et seq. and included a jury trial demand. JA 23. The basis for the District Court's subject matter jurisdiction was federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693, et seq.

The basis for appellate jurisdiction is 9 U.S.C. § 16(a)(3) and Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513 (2000) (holding that § 16(a)(3) of the Federal Arbitration Act "preserves immediate appeal of any 'final decision with respect to an arbitration,' regardless of whether the decision is favorable or hostile to arbitration.").

The District Court's order granting the motions to compel arbitration and administratively closing the case was entered on November 4, 2014. JA 424. Ms.

Bentaous filed a timely Notice of Appeal on November 18, 2014. JA 422-23.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Should Defendants who gain tactical and financial advantages in state court collection lawsuits by choosing not to rely upon and prove the existence of contractual terms and conditions be judicially estopped from asserting that a mandatory arbitration clause is contained in the very terms and conditions that the Defendants chose not to rely upon in the underlying collection lawsuit?

2.      When a Plaintiff requests a jury trial and there is a question of material fact as to whether an arbitration agreement exists, should that question of material fact be decided by a jury?

## STATEMENT OF THE CASE

Meryem Bentaous and the class she seeks to represent are consumer debtors who allege that the Defendants violated the FDCPA, MCDCA and MCPA by suing Maryland consumers to collect time-barred debts arising from unpaid balances due on line of credit accounts, and arguing that the lines of credit are actually goods subject to the UCC four-year statute of limitations without the ability to satisfy the UCC's statute of frauds.

Filing a time-barred collection suit is deceptive conduct under the FDCPA and MCDCA. The first case to address the issue, <u>Kimber v. Federal Financial Corp.</u>, 668 F. Supp. 1480 (M.D. Ala. 1987) held that it is unfair under the FDCPA

to file a time-barred collection suit against a consumer and deceptive to threaten to

file such a suit:

> As with any defendant sued on a stale claim, the passage of time not
> only dulls the consumer's memory of the circumstances and validity of
> the debt, but heightens the probability that she will no longer have
> personal records detailing the status of the debt. Indeed, the unfairness
> of such conduct is particularly clear in the consumer context where
> courts have imposed a heightened standard of care — that sufficient to
> protect the least sophisticated consumer. Because few unsophisticated
> consumers would be aware that a statute of limitations could be used to
> defend against lawsuits based on stale debts, such consumers would
> unwittingly acquiesce to such lawsuits. And, even if the consumer
> realizes that she can use time as a defense, she will more than likely still
> give in rather than fight the lawsuit because she must still expend
> energy and resources and subject herself to the embarrassment of going
> into court to present the defense; this is particularly true in light of the
> costs of attorneys today.

Kimber v. Fed. Fin. Corp., 668 F. Supp. 1480, 1487 (M.D. Ala. 1987).

The Kimber decision was adopted by the Eighth Circuit in Freyermuth v.

Credit Bureau Servs., Inc., 248 F.3d 767 (8th Cir. 2001). In Wallace v. Capital One

Bank, 168 F. Supp. 2d 526, 527 (D. Md. 2001), the court cited Kimber with

approval for the proposition that filing or threatening to file a time-barred

collection lawsuit violates 15 U.S.C. § 1692e — "[a] debt collector may not use

any false, deceptive, or misleading representation or meanings in connection with

the collection of a debt" — and § 1692e(2)(A) — a debt collector may not make

"[t]he false representation of the character, amount, or legal status of any debt."

Additionally, in McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d

939 (9th Cir. 2011), the Ninth Circuit held that the law firm could not establish a bona fide error defense when it filed a time-barred debt collection suit.

This lawsuit arises from the fact that Asset Acceptance purchased charged off debts for which no payment had been made on the account for more than three years. Then, with the assistance of its attorneys at Fulton Friedman, Asset Acceptance filed lawsuits beyond the controlling three-year statute of limitations while attempting to deceive the courts and Maryland consumers by including the following statement on the front page of the collection lawsuits: "4 year statute of limitations under MD. Com. Law § 2-725." JA14, ¶ 28. The Defendants included this false statement despite having actual knowledge that the subject debt was a line of credit account entered into with CIT Online Bank and was not a debt arising from the breach of a contract for the sale of goods.

Defendants also sought an affidavit judgment as part of their collection lawsuits and this request is governed by Md. R. 3-306, which provides in pertinent part:

> (d) If Claim Arises from Assigned Consumer Debt. If the claim arises from consumer debt and the plaintiff is not the original creditor, the affidavit also shall include or be accompanied by (i) the items listed in this section, and (ii) an Assigned Consumer Debt Checklist, substantially in the form prescribed by the Chief Judge of the District Court, listing the items and information supplied in or with the affidavit in conformance with this Rule. Each document that accompanies the affidavit shall be clearly numbered as an exhibit and referenced by number in the Checklist.

4

\*    \*    \*

       (2) Proof of Terms and Conditions.

         (A) Except as provided in subsection (d)(2)(B) of this Rule, <u>if there was a document evidencing the terms and conditions to which the consumer debt was subject, a certified or otherwise properly authenticated photocopy or original of the document actually applicable to the consumer debt at issue shall accompany the affidavit.</u>

         (B) Subsection (d)(2)(A) of this Rule does not apply if (i) the consumer debt is an unpaid balance due on a credit card; (ii) the original creditor is or was a financial institution subject to regulation by the Federal Financial Institutions Examination Council or a constituent federal agency of that Council; and (iii) the claim does not include a demand or request for attorneys' fees or interest on the charge-off balance in excess of the Maryland Constitutional rate of six percent per annum.

Md. R. 3-306 (emphasis supplied to show the <u>mandatory</u> nature of this requirement).

The rule requires that a debt buyer and its attorneys prove the existence of a contractual obligation with admissible evidence of the terms and conditions but also provides an exception for certain unpaid balances on credit cards. In the collections actions at issue in this dispute the Defendants chose to take advantage of this exception — Rule 3-306(d)(2)(B) — and avoided the obligation to actually produce admissible evidence of the existence of the terms and conditions of the credit agreement. But Defendants then went one step further, asserting that the transaction was governed by the UCC's four year statute of limitations even though any enforcement of such a contract for the sale of goods would be subject

to the UCC's statute of frauds.

Using this pleading approach, Defendants have obtained countless affidavit judgments against Maryland consumers on accounts that would have been barred by Maryland's three year statute of limitations, by boldly claiming that a four year statute of limitations applied, never producing contractual documents complying with the UCC's statute of frauds, but instead taking unfair advantage of the undeniable fact that thousands of unsophisticated consumers lack the means or ability to challenge collection lawsuits filed against them.

Scott Whiteman was the attorney in charge of Fulton Friedman's Maryland office from January 1, 2012, through May 1, 2104, when he left Fulton Friedman to begin working as in house counsel for Midland Credit Management. JA 94.

Mr. Whiteman testified that "Fulton Friedman & Gullace had a group of employees in Michigan who prepared our complaints and sent them to the Maryland office for my review." JA 95. In fact, the collection lawsuit filed against Ms. Bentaous, JA 101-06, was prepared in its entirety in the Michigan office. JA 96. The stamp that reads "4 year statute of limitations under MD Com. Law § 2-725" was physically added to the complaints by either Mr. Whiteman or a paralegal acting under his express direction after they were delivered from Michigan. JA 97.

In the collection lawsuit filed against Ms. Bentaous, Defendants alleged that Ms. Bentaous incurred and later allegedly defaulted on a debt in the amount of $2,239.57 owed to CIT OnLine Bank, for which the last payment was allegedly made on September 1, 2009. ECF 101-06. This lawsuit was filed on August 13, 2013, and would be time-barred if Maryland's three year statute of limitations applied.

The debt at issue in the collection lawsuit is a credit account entered between Ms. Bentaous and CIT OnLine Bank that was opened in January, 2005.[1] This account was later assigned to WebBank, and finally to Dell Financial Services, LLC.

In support of their motions to compel arbitration, Defendants initially relied upon a set of alleged terms and conditions that was first created in November, 2006. JA 108 (showing that the version was created in 1106, i.e., November, 2006, which is also verified by reference in the document to "Privacy Policy Effective Date November 1, 2006"). Although Defendants later located other earlier printings of alleged terms and conditions that contain an arbitration clause, they failed to produce any evidence establishing that any version of the alleged terms and conditions were either sent to or actually received by Ms. Bentaous.

---

[1] See JA 120 (showing that the credit application was created on January 10, 2005).

The various versions of the alleged terms and conditions were provided to Asset Acceptance when it purchased Ms. Bentaous' account and were also made available to the Fulton Friedman paralegals and lawyers involved in mass producing the collection complaints that were filed in Maryland. For example, during his deposition Mr. Whiteman admitted that although documents setting forth the alleged terms and conditions were not forwarded to him with the Bentaous complaint, he had nonetheless reviewed a terms and condition document before signing the Bentaous complaint. JA 98-99 (claiming to have received the document attached to an email dated January 9, 2013).

Each version of the alleged terms and conditions document contained an unambiguous choice of law provision providing that "the laws of the State of Utah apply to and govern your use of your Account." JA 74.

In the collection lawsuits filed against Ms. Bentaous and the members of the class she seeks to represent, Asset Acceptance and Fulton Friedman intentionally decided not to rely on the terms and conditions they had in their possession, but instead represented to the Maryland District Court that the requirement that they provide "Proof of Terms and Conditions" as required by Md. R. 3-306(d)(2) "does not apply because the consumer debt is an unpaid balance on a credit card, the original creditor is or was a financial institution subject to regulation by the Federal Financial Institution Examination Council or a constituent federal agency of that

8

Council, and the claim does not include a demand or request for attorney's fees or interest on the charge-off balance in excess of the Maryland Constitutional rate of six percent per annum." <u>See</u> JA 104:



During discovery the Defendants were unable to produce any contractual document signed by Ms. Bentaous or, with one possible exception, any proof of the documents that were actually provided to Ms. Bentaous during her relationship with CIT OnLine Bank. CIT OnLine Bank, the original creditor, has no records of these terms and conditions being applicable to its transaction with Ms. Bentaous. JA 219 ("We are in receipt of the Subpoena . . . Please be advised that CIT has been unable to locate an account or documents responsive to your request.").

Instead, Defendants based their claim that an agreement to arbitrate existed on circumstantial evidence that ultimately is nothing more than conjecture or speculation. For example, the Defendants rely on testimony from Kevin Smith who works for Dell as a Senior Manager of Recovery. JA 111. His job responsibilities involve the sale of accounts charged off by Dell to debt buyers, such as Asset Acceptance. JA 112-13. He has no firsthand knowledge of the process involved when the charge accounts are opened:

Q.    Okay. Do you have personal knowledge of the process involved when accounts are opened, actually, at Dell?

A.    Not firsthand knowledge.

JA 113. Rather, Mr. Smith's testimony is that new customers are sent "a copy of their welcome package, which includes the terms and conditions, and they have three days to dispute their terms and conditions." JA 114. No such terms and conditions were part of the Dell records that related specifically to Ms. Bentaous' account. Rather the documents came from a "shared folder" of terms and conditions that Dell provided to Asset Acceptance as part of the debt purchase transaction. JA 115-17. In this regard, Mr. Smith testified as follows:

> Terms and conditions are sent to the debt buyer at the time of sale, and they will cover the accounts that were a part of that sale. A terms and conditions is not sent specific to a customers account, it's sent with the sale file.

JA 118.

Mr. Smith was deposed by counsel for all parties on June 23, 2014. On September 3, 2014, Attorney Jonker forward an affidavit dated August 8, 2014, which the Defendants had Mr. Smith sign wherein he literally wrote his name on a form prepared by one or more of the Defendants. In that affidavit Mr. Smith attempts to provide testimony on matters upon which he has previously admitted under oath are matters for which he has no personal knowledge. JA 234 (Rather, the witness claims that he was "personally acquainted" with the facts: "I routinely

10

review DFS records and I am personally acquainted with the facts herein stated.").[2] Thus, the testimony of Smith boils down to a Dell chart containing an indication that terms and conditions were accepted but no evidence from CIT Online bank actually showing a computer or data trail indicating that Ms. Bentaous accepted them.

Asset Acceptance witness Elizabeth MacLean also confirmed that generic terms and conditions documents were included with the bills of sale and chain of title information. JA 126. Her testimony also confirms that the actual records directly relating to Ms. Bentaous do not include a copy of any terms and conditions actually sent to Ms. Bentaous or any indication that any such terms and conditions were actually sent and delivered to her. Rather the Defendants' evidence is based on the assumption that Ms. Bentaous must have received the terms and conditions because CIT Online Bank was supposed to send them to its customers. Based on this belief the Defendants just look at the dates of the various versions of the terms and conditions and pick the one that would have been created closest to but before the date the credit account was opened.

---

[2] This phrase is used in some form affidavits, most notably in Texas, to connote personal knowledge of the affiant. See Tex. R. Evid. 902.10(b). No Maryland court has ruled that this language is sufficient for affidavit purposes, however. See Md. R. 1-304 (explaining that an affidavit based on "Personal Knowledge" must include the following statement: "I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.").

In other words, there is no paper trail establishing that Ms. Bentaous actually was provided with the terms and conditions that contain the arbitration clause. Rather, the terms and conditions relied upon by the Defendants were just exemplars of CIT Online Bank documents that were provided by Dell at the time of sale of the charged off account.

Additionally, Ms. Bentaous does not recall having to agree to any terms and conditions as part of the purchase in 2005:

> Q    Now, do you recall having to review terms and conditions for the Dell credit account that you applied for online?
>
> A    I don't recall that. All that I remember is I went -- you know, when I found the computer I just put, like you said, Social Security, my information, they approved me, then I went ahead and I bought the computer.
>
> Q    Do you recall having to click on a box saying, you know, click on this if you agree with the terms and conditions for this account?
>
> A    I don't recall that. Probably has something like that, but I don't recall it. I just remember that I put my information, bought the computer.

JA 271.

Defendants failed to produce such a record, and by asking this question the Defendants effectively conceded that there is no record showing that Ms. Bentaous has agreed to any terms and conditions. Obviously, had Ms. Bentaous actually been required to "click a box" agreeing to terms and conditions there would be a

record establishing her acceptance. Neither the original creditor, CIT Online Bank, nor its subsequent assignees WebBank and Dell Financial Services have any such record.

Similarly, Ms. Bentaous does not recall receiving any information in an envelope about the credit account she had opened, JA 272, or any terms and conditions on the account, JA 273. All she recalls is receiving an email saying congratulations for the purchase and then receiving a bill for the balance she owed. JA 272-73; 277 ("Q: Do you recall at any time receiving from Dell Financial Services terms and conditions or a credit agreement related to your credit account with them? A: No, no. Q: Is it the sort of thing you think you would remember if you had received it? A: Yes, I would."); 279-80 ("Q: Do you recall being informed either online when you made the purchase or in writing at any time by Dell Financial Services that you had three days in which to change your mind, not go through with the purchase? A. No, no, because otherwise I will remember too.").

Defendants failed to produce any document sent to Ms. Bentaous or signed by her, or acknowledged by her or received by her showing that Ms. Bentaous agreed to any terms and conditions containing a mandatory arbitration clause as part of the online purchase of the items.

## SUMMARY OF ARGUMENT

The Fourth Circuit uses a three factor test for determining when judicial estoppel should be applied, each of which are present in this dispute:

1)       The party sought to be estopped must be seeking to adopt a factual position that is inconsistent with a stance taken in prior litigation;

2)       The prior inconsistent position must have been accepted by the court in charge of the prior litigation; and

3)       The party sought to be estopped must have intentionally misled the court to gain an unfair advantage.

First, in their motions to compel arbitration Defendants sought to enforce an arbitration provision contained in written terms of conditions and asserted that these terms and conditions governed the transaction with Ms. Bentaous that was subject to the collection lawsuit it filed against her outside the Maryland three year statute of limitations. This position was directly inconsistent with the position the Defendants actually took in the collection lawsuit filed against Ms. Bentaous as well as in every other similar collection lawsuit the Defendants filed in Maryland state court. In the collection lawsuits, Asset Acceptance, through its attorneys Fulton Freidman, represents under oath that it is not basing its claim against consumers on any written terms and conditions or contract. This representation then allowed Asset Acceptance to take advantage of a Maryland procedural rule

14

that allows creditors to obtain affidavit judgments against consumers even without proving the actual terms and conditions of the contract underlying the alleged debt.

Second, the court below was presented with undisputed evidence that the Baltimore City District Court has accepted the inconsistent position that Defendants take in similar collection lawsuits.

Finally, the court below was presented with undisputed evidence that the Defendants benefited greatly from the inconsistent position they asserted in the collection lawsuits. This evidence established that Defendants made a tactical decision to intentionally disavow any reliance upon contractual terms and conditions so they could avoid the requirement of Md. R. 3-306(d)(2)(A) that they prove the terms and conditions of the debt obligation in order to obtain an affidavit judgment should the consumer not respond to the complaint. This tactical decision also allowed the Defendants to assert that Maryland law applied to the claim, even though the terms and conditions provided that Utah law applied. This tactical choice benefited the Defendants financially because Maryland's post judgment interest rate of 10% is far more generous than Utah's rate, which is the federal post judgment rate (28 U.S.C. § 1961) as of January 1 of each year plus 2%. See Utah Code Ann. § 15-14 (noting that the rate can also be the rate agreed upon in the contract, provided that the Defendants could actually prove the existence of a written contract).

15

For these reasons, the court below should have denied the motions to compel arbitration on judicial estoppel grounds.

The court below also should have denied the motions to compel arbitration because a factual dispute existed as to whether the terms and conditions were actually delivered to Ms. Bentaous. In fact the weight of the evidence presented to the court actually supported the Plaintiff's recollection that she did not receive any documents as part of the purchases at issue in the collection lawsuit.

Although the Defendants obtained significant data that related specifically to Ms. Bentaous as part of the purchase of her charged-off account, this data did not include a copy of any transmittal letter showing that the terms and conditions were actually sent to Ms. Bentaous. Likewise, the Defendants were unable to produce evidence of actual delivery of the terms and conditions or any evidence that Ms. Bentaous accepted the terms and conditions as part of her online purchases. Most notably, no evidence was produced establishing a contract under the Uniform Electronic Transactions Act (UETA), which has been adopted by Maryland and Utah, the two states whose laws were implicated in the underlying collection dispute.

Instead, the court below accepted Defendants' hearsay affidavit testimony claiming that because a terms and condition document was created by CIT Online Bank it must have been sent to Ms. Bentaous.

16

On the record before it, however, the court below should have either denied the motions to compel or allowed the factual dispute to be resolved by a jury.

## ARGUMENT

### A.    STANDARD OF REVIEW

A district court's ruling on a motion to compel arbitration is reviewed de novo but the court's factual determinations are entitled to deference. See, e.g., MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 250 (4th Cir. 2001) ("We review de novo a district court's conclusion that a party's conduct amounts to waiver of the right to arbitrate, although the court's factual determinations upon which the waiver finding was based are entitled to deference."); Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 203-04 (4th Cir. 2004) ("Although the underlying factual findings of the district court are entitled to deference, the decision to deny Skanska's motion for stay and to compel arbitration is reviewed de novo.").

Thus, the standard of review is something less than the abuse of discretion standard, under which "[a] district court abuses its discretion by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation." In re Naranjo, 768 F.3d 332, 347 (4th Cir. 2014), quoting, Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 112 (4th Cir.2013). As demonstrated below, however, the District Court's decision must be

overturned even under the abuse of discretion standard because the court made findings of fact that should have been made by a jury and misapprehended the controlling law on judicial estoppel

**B.    DISCUSSION OF ISSUES**

**1.    A PARTY MAY NOT ADOPT A POSITION IN A PENDING CASE THAT IS INCONSISTENT WITH A POSITION IT HAS TAKEN IN PRIOR LITIGATION.**

"Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28–29 (4th Cir. 1995) (citations and internal quotation marks omitted).

The Fourth Circuit uses a three factor test for determining when judicial estoppel should be applied.

> First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. *Id.* And the position sought to be estopped must be one of fact rather than law or legal theory. Tenneco, 691 F.2d at 664–65; Plumer, supra, at 411.

> Second, the prior inconsistent position must have been accepted by the court. Teledyne, 911 F.2d at 1218; see Allen, 667 F.2d at 1167 (finding that "the record conclusively shows" that the party had successfully asserted a prior inconsistent position). The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of

18

circumstances. Indeed, "the prior success rule narrows the scope of judicial estoppel to the point at which the necessity of protecting judicial integrity outweighs the ramifications of that protection upon the litigant and the judicial system." <u>Boyers</u>, supra note 3, at 1256. Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution. <u>See</u> <u>Faggert & Frieden</u>, 65 F.3d at 29.

Finally, the party sought to be estopped must have "intentionally misled the court to gain unfair advantage." <u>Tenneco</u>, 691 F.2d at 665. Indeed, we have stated that this factor is the "determinative factor" in the application of judicial estoppel to a particular case. <u>Id.</u>; <u>Faggert & Frieden</u>, 65 F.3d at 29. Thus, courts will not apply judicial estoppel "when a party's prior position was based on inadvertence or mistake." <u>Faggert & Frieden</u>, 65 F.3d at 29.

<u>Lowery v. Stovall</u>, 92 F.3d 219, 224 (4th Cir. 1996). <u>See also</u> <u>In re Mut. Funds Inv. Litig.</u>, 681 F. Supp. 2d 622, 627 (D. Md. 2010) aff'd sub nom. <u>Steinberg v. Janus Capital Mgt., LLC</u>, 457 Fed. Appx. 261 (4th Cir. 2011)(unpublished) ("The requirements for applying judicial estoppel are: (1) 'the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation'; (2) '[t]he position at issue must be one of fact as opposed to one of law'; (3) 'the prior inconsistent position must have been accepted by the court'; (4) 'the party against whom judicial estoppel is to be applied must have intentionally misled the court to gain unfair advantage.') (citing <u>Zinkand v. Brown</u>, 478 F.3d 634, 638 (4th Cir. 2007)).

As demonstrated above, each of these elements is present in this dispute.

### a.    Defendants Are Seeking To Adopt an Inconsistent Position.

In their motions to compel arbitration Defendants adopted a position that is inconsistent with the position they have repeatedly taken in their collection lawsuits filed in the District Court of Maryland. In the collection lawsuits, Asset Acceptance and Fulton Friedman represented to the Maryland District Court that the requirement to provide "Proof of Terms and Conditions" established by Md. R. 3-306(d)(2) "does not apply because the consumer debt is an unpaid balance on a credit card, the original creditor is or was a financial institution subject to regulation by the Federal Financial Institution Examination Council or a constituent federal agency of that Council, and the claim does not include a demand or request for attorney's fees or interest on the charge-off balance in excess of the Maryland Constitutional rate of six percent per annum."

In this manner Defendants made a tactical decision to disavow any reliance upon contractual terms and conditions so they could avoid the requirement of Md. R. 3-306(d)(2)(A) of providing admissible evidence of the terms and conditions of the debt obligation in order to obtain an affidavit judgment should the consumer not respond to the complaint. This tactical decision also allowed the Defendants to assert that Maryland law applied to the claim, even though the terms and conditions provided that Utah law applied. This tactical choice benefited the Defendants financially because Maryland's post judgment interest rate of 10% is

far more generous than Utah's rate, which is the federal post judgment rate (28 U.S.C. § 1961) as of January 1 of each year plus 2%. See Utah Code Ann. § 15-14.[3]

Now faced with a class action complaint challenging their widespread practice of suing consumers beyond the expiration of the statute of limitations, the Defendants changed course, asserting that they should be allowed to benefit from an arbitration clause contained in terms and conditions that allegedly governed the underlying transaction.

This is a classic example of a party taking one factual position to its advantage in one litigation setting and then attempting to take the complete opposite position in subsequent litigation in order to avoid the consequences of its earlier representation to a court. In their collection lawsuits they present claims that they assert are not based upon the terms and conditions governing the underlying alleged debts and, having taken this position, should be required to live with the same position — i.e., that there are no terms and conditions governing the underlying transaction — in this case as well.

---

[3] It can also be based upon the rate agreed upon in the contract, provided that the Defendants could actually prove the existence of a written contract something that they knew they would have trouble doing based upon the limited records they obtained as part of the purchase of the debt.

### b.    The Prior Inconsistent Position Has Been Accepted by the District Court of Maryland.

The court below was presented with an uncontested review of the dockets and pleadings of 25 lawsuits brought by Defendants in the Baltimore City District Court that demonstrated that each lawsuit sought to collect a debt for which the last payment had been made more than three years prior to the date the lawsuit was filed. Each lawsuit contained an allegedly false statement to the effect that the statute of limitations was four years. Each lawsuit sought an affidavit judgment supported by a checklist that claimed that Asset Acceptance did not need to provide proof of the terms and conditions of the contract "because the consumer debt is an unpaid balance on a credit card, the original creditor is or was a financial institution subject to regulation by the Federal Financial Institution Examination Council or a constituent federal agency of that Council, and the claim does not include a demand or request for attorney's fees or interest on the charge-off balance in excess of the Maryland Constitutional rate of six percent per annum." Finally, in 18 of the 25 lawsuits the Defendants were able to obtain an affidavit judgment after having represented to the District Court of Maryland that they did not have to present proof of the terms and conditions of the credit contract. In one of those 25 cases the Defendants obtained a default judgment, and in the remaining six cases, Asset Acceptance filed notices of voluntary dismissal under Rule 3-506. See JA 129-211.

22

The data from this investigation is summarized as follows:

| D.Ct. of Maryland Docket Number | Date of Last Payment | Date Lawsuit was filed | Is the complaint stamped with a claim that the Md. UCC four year statute of limitations applies? | Does the checklist claim that the debt is an unpaid balance of a credit card? | Date Affidavit Judgment Entered Against Consuemr |
|---|---|---|---|---|---|
| 5369-2013 | 12/29/09 | 3/4/13 | Yes | Yes | Rule 3-506 Dismissal |
| 5443-2013 | 2/25/10 | 3/4/13 | Yes | Yes | 5/6/2013 |
| 5769-2013 | 2/6/10 | 3/13/13 | Yes | Yes | Rule 3-506 Dismissal |
| 8323-2013 | 3/13/10 | 4/5/13 | Yes | Yes | 6/7/2013 |
| 10169-2013 | 2/6/10 | 4/29/13 | Yes | Yes | 7/1/2013 |
| 10171-2013 | 1/22/10 | 4/29/13 | Yes | Yes | 7/1/2013 |
| 10172-2013 | 6/26/09 | 4/29/13 | Yes | Yes | Rule 3-506 Dismissal |
| 10174-2013 | 6/24/09 | 4/29/13 | Yes | Yes | Rule 3-506 Dismissal |
| 10175-2013 | 4/22/10 | 4/29/13 | Yes | Yes | 7/1/2013 |
| 10182-2013 | 6/23/09 | 4/29/13 | Yes | Yes | 7/1/2013 |
| 10739-2013 | 1/5/10 | 5/3/13 | Yes | Yes | Rule 3-506 Dismissal |
| 10747-2013 | 12/15/09 | 5/3/13 | Yes | Yes | 7/8/2013 |
| 12401-2013 | 7/6/09 | 5/22/13 | Yes | Yes | 7/24/2013 |
| 12402-2013 | 5/3/09 | 5/22/13 | Yes | Yes | Rule 3-506 Dismissal |
| 12404-2013 | 7/3/09 | 5/22/13 | Yes | Yes | Default Judgment 10/9/2013 |
| 12405-2013 | 6/26/09 | 5/22/13 | Yes | Yes | 7/24/2013 |
| 12406-2013 | 7/17/09 | 5/22/13 | Yes | Yes | 7/24/2013 |
| 12407-2013 | 6/4/09 | 5/22/13 | Yes | Yes | 7/24/2013 |
| 12932-2013 | 10/3/09 | 6/3/13 | Yes | Yes | 8/5/2013 |
| 12934-2013 | 8/7/09 | 6/3/13 | Yes | Yes | 8/5/2013 |
| 12936-2013 | 7/15/09 | 6/3/13 | Yes | Yes | 8/5/2013 |

23

| 12937-2013 | 7/5/09 | 6/3/13 | Yes | Yes | 8/5/2013 |
| 12938-2013 | 8/20/09 | 6/3/03 | Yes | Yes | 8/5/2013 |
| 12940-2013 | 9/18/09 | 6/3/13 | Yes | Yes | 8/5/2013 |
| 12941-2013 | 4/23/10 | 6/3/13 | Yes | Yes | 8/5/2013 |

See id.[4]

### c.  Defendants Intentionally Misled the District Court of Maryland to Gain an Unfair Advantage.

It is beyond dispute that the Defendants' actions in the District Court of Maryland were intentional. Mr. Whitman testified that he and his Maryland-based staff applied the "4 year statute of limitations under MD Com. Law § 2-725" stamp before the lawsuits were filed. JA 97. Asset Acceptance received the terms and conditions when it purchased the accounts and Mr. Whiteman specifically reviewed them before adding his signature to the complaint he filed against Ms. Bentaous and other Maryland consumers. Despite this actual knowledge, Defendants misled the District Court of Maryland by representing that Asset Acceptance need not provide the proof of the terms and conditions of that debt

---

[4] Along with other reasons, Rule 3-506 dismissals are entered when voluntary settlements are entered between the consumer and Asset Acceptance. See Md. R. 3-506(b) (which provides for a dismissal upon stipulated terms when an action is settled with the ability to reopen to enforce the settlement terms through the entry of a judgment).

obligation that is generally required by Md. R. 3-306(d)(2)(A) in order to obtain an affidavit judgment should the consumer not respond to the complaint.

This allowed the Defendants to gain an unfair advantage over Maryland consumers by allowing them to take a shortcut to obtain a judgment without actually needing to provide admissible evidence proving the existence of an underlying credit contract. The biggest benefit is that it allowed them to mass produce collection lawsuits without having to locate the proper version of the terms and conditions that would have applied to each individual consumer and without having to produce and attach to the collection lawsuit "a certified or otherwise properly authenticated photocopy or original of the document actually applicable to the consumer debt at issue." Md. R. 3-306(d)(2)(A).

Thus, all of the elements of judicial estoppel existed and the District Court's conclusion that "Bentaous has not established any of these elements" is either a clearly erroneous finding of a material fact or a conclusion based upon a clear misapprehension of the three factor test used for determining when judicial estoppel applies.

First, the District Court's explanation of its decision actually illustrates the inconsistent positions taken by Defendants. In its opinion below, the court concluded that Asset Acceptance "simply stated that it was relying upon a '[b]ill or other record' to establish the existence of a debt and that proof of terms and

conditions 'does not apply' because of the reasons stated in the box which is checked." JA 419. This is precisely the point. In their collection lawsuits, the Defendants tell the District Court of Maryland that they are not relying on the terms and conditions or any other contractual documents to prove the existence of a debt or to prove the terms and conditions of the contract. The procedure created by Md. R. 3-306(d)(2)(A) allows debt collectors to take this procedural shortcut and sue for a breach of contract without actually having to prove the existence of a contract. This also allowed the Defendants to assert that Maryland law applied to the claim, even though the terms and conditions provided that Utah law applied, a fact that the court below failed to address in its opinion.

Likewise, the court below failed to address the fact that this tactical choice benefited the Defendants financially because Maryland's post judgment interest rate of 10% is far more generous than Utah's rate, which is the federal post judgment rate as of January 1 of each year plus 2%. See Utah Code Ann. § 15-14 (noting that the rate can also be the rate agreed upon in the contract, provided that the Defendants could actually prove the existence of a written contract).

Finally, the court below failed to credit the undisputed evidence establishing that the District Court of Maryland regularly accepted the inconsistent position that Defendants were uniformly taking in all of their collection lawsuits. Specifically, a review of 25 case files showed that in 18 of the 25 lawsuits the Defendants were

able to obtain an affidavit judgment after having represented to the Court that they did not have to present proof of the terms and conditions of the credit contract. In another of the cases the Defendants obtained a default judgment, and in the remaining six cases, Asset Acceptance filed notices of voluntary dismissal under Rule 3-506. <u>See</u> JA 129-211.

Thus, the evidence presented to the court below provided it with a classic example of a party taking one factual position to its advantage and then attempting to take the complete opposite position in subsequent litigation in order to avoid the consequences of its earlier representation to the Maryland courts that its collections claims were not governed by any written contractual terms and conditions. The Defendants should not be allowed to play fast and loose with the facts underlying their claim. Having chosen to disavow the existence of any terms and conditions in order to ease their path towards judgments against consumers, the Defendants should be required to live with that choice and not be allowed to change the facts and selectively rely on contractual terms and conditions when it suits them to do so to compel arbitration and continue to collect allegedly time barred debts without any realistic penalty because the arbitration clause also contains a class action waiver.

## 2. A PARTY MAY NOT ESTABLISH A CONTRACT WITHOUT PROOF OF ACCEPTANCE OF THE CONTRACT'S ALLEGED TERMS AND CONDITIONS.

A factual dispute exists as to whether Ms. Bentaous accepted the terms and conditions. The weight of the evidence developed so far supports Ms. Bentaous' recollection that she did not receive any documents as part of the purchases at issue in the collection lawsuit. For example, while the Defendants obtained significant data that related specifically to Ms. Bentaous as part of the purchase of her charged off account, this data did not include a copy of any transmittal letter showing that the terms and conditions were actually sent. Similarly, there are no records showing that she agreed to any terms and conditions as part of her online purchases. Defendants also failed to produce any contract document containing an arbitration clause that was actually signed by Ms. Bentaous, or any evidence of actual delivery of the terms and conditions, or any evidence that Ms. Bentaous accepted the terms and conditions as part of her online purchases. However, the District Court found in error that Ms. Bentaous accepted the terms and conditions (1) because a spreadsheet had a "Y" entered on the "Terms_Accept" line, (2) because it assumed that the terms and conditions were mailed to her, and (3) that Plaintiff accepted the terms and conditions by keeping the computer equipment she

28

initially purchased and by using the account to purchase additional computer equipment.

### a.    There Is No Evidence in The Record That Ms. Bentaous Accepted the Terms and Conditions in an Electronic Environment.

There is no evidence in the record that Ms. Bentaous accepted the terms and conditions electronically as a part of her online purchase. A contract executed in an electronic environment must contain an electronic signature that can be linked to the alleged party to the agreement. The Electronic Records and Signatures in Global and National Commerce (E-Sign) Act, 15 U.S.C. § 7001, et seq., creates a general rule of validity for contracts in electronic form. It does not otherwise alter the required elements of an enforceable contract. 15 U.S.C. § 7001(b). An electronic record still must bear the elements of a valid contract to create a binding agreement between the parties. Id. Assent to the contract may also be manifested in electronic form. Id. at § 7001(a).

An electronic signature is "an electronic sound, symbol, or process attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record." Id. at § 7006(5). The Uniform Electronic Transactions Act (UETA), which has been adopted by many states including Maryland and Utah, provides that an "electronic signature is attributable to a person if it was the act of the person." UETA § 9(a); Md. Code, Com. Law §

21-108; Utah Code § 46-4-203(1). Proof that the individual made the act which created an electronic signature may be made by showing the security procedure applied to determine the person who made the electronic signature. Id. A "'security procedure' means a procedure employed for the purpose of verifying that an electronic signature, record, or performance is that of a specific person or for decking changes or errors in the information in an electronic record." UETA § 2(14); Md. Code, Com. Law § 21-101(o); Utah Code § 46-4-102(14)(a). "'Security procedure' includes a procedure that requires the use of algorithms or other codes, identifying words or numbers, encryption, or callback or other acknowledgment procedures." UETA § 2(14); Md. Code, Com. Law § 21-101(o); Utah Code § 46-4-102(14)(b).

In a click-through transaction, where the person engages in a process by clicking on electronic buttons on a webpage, UETA § 2 cmt. 7, attribution of the signature is essential because the record of the webpage is anonymous on its face. UETA § 14 cmt. 2. Suggested proof that the person engaged in a click-through process includes a showing of security procedures tracking the source of the click-through. UETA § 9 cmt. 5.

In addition, UETA § 8(a) provides that:

If parties have agreed to conduct a transaction by electronic means and a provision of law requires a person to provide, send or deliver information in writing to another person, the requirement is satisfied if the information is provided, sent, or delivered, as the case may be, in

30

> an electronic record capable of retention by the recipient at the time of receipt. An electronic record is not capable of retention by the recipient if the sender or the sender's information processing system inhibits the ability of the recipient to print or store the electronic record.

Md. Code, Com. Law § 21-107(a); Utah Code § 46-4-202(1). UETA § 8(c) provides that "if a sender inhibits the ability of a recipient to store or print an electronic record, the electronic record is not enforceable against the recipient." Md. Code, Com. Law § 21-107(c); Utah Code § 46-4-202(3).

Defendants failed to produce any direct evidence that Ms. Bentaous performed a click through of any terms and conditions as part of the online purchase. Instead, the court below based its decision on the testimony of witness who claimed he knew the general practice with Dell "by virtue of the fact that he had opened his own account with Dell years ago." JA 418, n. 1. In other words because a witness for the Defendants testified that he remembered having to agree to terms and conditions as part of his online purchase, the court below discredited entirely Ms. Bentaous' testimony that she did not have to agree to terms and conditions as part of her purchase and did so even though Defendants failed to produce the type of proof that is regularly available and maintained in order to take advantage of the UETA.

The court below accepted Defendants' hearsay affidavit testimony claiming that because a terms and condition document was created by CIT Online Bank it

must have been sent to Ms. Bentaous. However, CIT Online Bank has no record that Ms. Bentaous accepted terms and conditions in an electronic environment. JA 213-19. In fact, CIT Online Bank has no records applicable to Ms. Bentaous. JA 219.

The only document Defendants have produced is a Dell Financial Services spreadsheet indicating that the "Terms Accept DATE" was January 10, 2005, the same date that Ms. Bentaous made her credit application with CIT Online Bank. Compare JA 221 with JA 120.[5] However, Defendants did not establish that Ms. Bentaous was actually presented these terms and conditions in a "click-through" transaction or any other type of assent.

### b.    The Record Does Not Establish That Ms. Bentaous Was Mailed the Terms and Conditions.

The court below also reasoned that Ms. Bentaous accepted the terms and conditions by failing to reject them after receiving them in the mail. However, evidence does not exist to support the proposition that Ms. Bentaous received the terms and conditions in the mail. Without such proof there is likewise no factual basis for holding that the Plaintiff accepted the terms and conditions by keeping the computer equipment she initially purchased and by using the account to purchase

---

[5] The court below focused on this evidence and concluded that it established that the terms and conditions had been accepted based solely on the entry at JA 221 that indicates a "Y" in the Terms_Accept line.

additional computer equipment.

Dell's corporate designee, Kevin Smith, testified that he lacked firsthand knowledge of the process involved when a customer opens an account at Dell and his testimony as to what he believed would have been done based upon his past personal experience is entitled to no weight. JA 113. Additionally, he conceded in his testimony that the terms and conditions produced by Defendant were in no manner linked to Ms. Bentaous in Dell's computer system. JA 319-20.

On this record the court below should have denied the motions to compel because the Defendants failed to establish the existence of an agreement to arbitrate. At a minimum, the record presented to the court below established a dispute of material fact on the central issue of whether the terms and conditions containing the arbitration provision were actually delivered to or received by Ms. Bentaous. The court below clearly abused its discretion by resolving this dispute of fact because Ms. Bentaous had exercised her right to have the facts of her case determined by a jury. As explained in Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co., 912 F. Supp. 2d 321, 332-33 (D. Md. 2012):

> [The FAA reserves for trial the question of whether an arbitration agreement has been made, provided that a question of fact as to that issue is properly generated. See 9 U.S.C. § 4.12 . . . In order to generate an issue for resolution by a fact finder, however, the party opposing arbitration must make " 'an unequivocal denial that the agreement [to arbitrate] had been made,' " and must produce " 'some evidence ... to substantiate the denial.' "

(Citations omitted, emphasis supplied). As outlined above, Ms. Bentaous produced sufficient evidence substantiating her denial that an agreement to arbitrate had been made in this case, most notably a complete failure on the part of Defendants to establish proof of a click through transaction or other direct evidence establishing that terms and conditions were sent to her. Thus, at best Defendants merely raised a question of fact on this issue and Ms. Bentaous was entitled to have a jury determine whether a contract containing an arbitration clause was formed in this case.

## CONCLUSION

On the evidentiary record before the court below, the Defendants failed to carry their burden of establishing the existence of an agreement to arbitrate. Even if such an agreement existed, the court below abused its discretion by holding that the Defendants were not barred by the doctrine of judicial estoppel from asserting the existence of terms and conditions containing an agreement to arbitrate after intentionally taking and benefiting from an inconsistent position in the hundreds of collection lawsuits they have filed against Maryland consumers beyond the three year statute of limitations.

For these reasons, Ms. Bentaous requests that the Court of Appeals reverse the order of the U.S. District Court granting the motions to compel arbitration and remand the case to the District of Maryland.

## REQUEST FOR ORAL ARGUMENT

Ms. Bentaous requests oral argument because this case raises important issues for hundreds of Maryland consumers. If this case is arbitrated on an individual basis, thousands of Maryland consumers will lose the protection that Rule 23 provides consumers in combatting illegal debt collecting practices. In addition to these extraordinarily high stakes, this case provides an important factual setting in which to consider the application of Fourth Circuit precedent relating to judicial estoppel and what constitutes a contract under the Uniform Electronic Transactions Act.

Respectfully Submitted,

/s/ E. David Hoskins
E. David Hoskins
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
Counsel for Appellant

/s/ Max F. Brauer
Max F. Brauer
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
Counsel for Appellant

35

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1.      This brief has been prepared with Word, using a proportionally spaced serif typeface, Times New Roman, 14 point font.

2.      Exclusive of: table of contents; table of authorities; any addendum containing statutes, rules, or regulations; and the certificate of service this brief contains 8,376  words.

3.      I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or copy of the word or line printout.


<u>/s/ E. David Hoskins</u>
E. David Hoskins
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
Counsel for Appellant


<u>/s/ Max F. Brauer</u>
Max F. Brauer
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
Counsel for Appellant

## <u>CERTIFICATE OF FILING AND SERVICE</u>

On the 7th day of January, 2015, I filed the required copies of the foregoing OPENING BRIEF OF APPELLANT with the Clerk of Court via hand delivery and electronically using the CM/ECF system, which will send a notice of electronic filing to:

Terri S. Reiskin         Cynthia L. Fulton
DYKEMA & GOSSETT, PLLC    FULTON FRIEDMAN & GULLACE, LLP
Suite 2300 West           Suite 460
1300 I Street, NW        2345 East Thomas Road
Washington, DC 20005     Phoenix, AZ 85016

Counsel for Appellees      Counsel for Appellees
Asset Acceptance LLC     Fulton Friedman & Gullace, LLP

/s/ E. David Hoskins
E. David Hoskins
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
Counsel for Appellant

/s/ Max F. Brauer
Max F. Brauer
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
Counsel for Appellant

## ADDENDUM SETTING FORTH RELEVANT PORTIONS OF STATUES

### Maryland Rule 3-306. Judgment on Affidavit

(a) Definitions. In this Rule the following definitions apply except as expressly otherwise provided or as necessary implication requires:

(1) Charge-off. "Charge-off" means the act of a creditor that treats an account receivable or other debt as a loss or expense because payment is unlikely.

(2) Charge-off Balance. "Charge-off balance" means the amount due on the account or debt at the time of charge-off.

(3) Consumer Debt. "Consumer debt" means a secured or unsecured debt that is for money owed or alleged to be owed and arises from a consumer transaction.

(4) Consumer Transaction. "Consumer transaction" means a transaction involving an individual seeking or acquiring real or personal property, services, future services, money, or credit for personal, family, or household purposes.

(5) Original Creditor. "Original creditor" means the lender, provider, or other person to whom a consumer originally was alleged to owe money pursuant to a consumer transaction. "Original creditor" includes the Central Collection Unit, a unit within the State Department of Budget and Management.

(6) Original Consumer Debt. "Original consumer debt" means the total of the consumer debt alleged to be owed to the original creditor, consisting of principal, interest, fees, and any other charges.
Committee note: If there has been a charge-off, the amount of the "original consumer debt" is the same as the "charge-off balance."

(7) Principal. "Principal" means the unpaid balance of the funds borrowed, the credit utilized, the sales price of goods or services obtained, or the capital sum of any other debt or obligation arising from a consumer transaction, alleged to be owed to the original creditor. It does not include interest, fees, or charges added to the debt or obligation by the original creditor or any subsequent assignees of the consumer debt.

38

(8) Future Services. "Future services" means one or more services that will be delivered at a future time.

(9) Future Services Contract. "Future services contract" means an agreement that obligates a consumer to purchase a future service from a provider.

(10) Provider. "Provider" means any person who sells a service or future service to a consumer.

(b) Demand for Judgment by Affidavit. In an action for money damages a plaintiff may file a demand for judgment on affidavit at the time of filing the complaint commencing the action. The complaint shall be supported by an affidavit showing that the plaintiff is entitled to judgment as a matter of law in the amount claimed.

(c) Affidavit and Attachments--General Requirements. The affidavit shall:

(1) be made on personal knowledge;

(2) set forth such facts as would be admissible in evidence;

(3) show affirmatively that the affiant is competent to testify to the matters stated in the affidavit; and;

(4) include or be accompanied by:

(A) supporting documents or statements containing sufficient detail as to liability and damages, including the precise amount of the claim and any interest claimed;

(B) if interest is claimed, an interest worksheet substantially in the form prescribed by the Chief Judge of the District Court;

(C) if attorneys' fees are claimed, sufficient proof evidencing that the plaintiff is entitled to an award of attorneys' fees and that the fees are reasonable; and

(D) if the claim is founded upon a note, security agreement, or other instrument, the original or a photocopy of the executed instrument, or a sworn or certified copy, unless the absence thereof is explained in the affidavit.

(d) If Claim Arises from Assigned Consumer Debt. If the claim arises from consumer debt and the plaintiff is not the original creditor, the affidavit also shall include or be accompanied by (i) the items listed in this section, and (ii) an Assigned Consumer Debt Checklist, substantially in the form prescribed by the Chief Judge of the District Court, listing the items and information supplied in or with the affidavit in conformance with this Rule. Each document that accompanies the affidavit shall be clearly numbered as an exhibit and referenced by number in the Checklist.

(1) Proof of the Existence of the Debt or Account. Proof of the existence of the debt or account shall be made by a certified or otherwise properly authenticated photocopy or original of at least one of the following:

(A) a document signed by the defendant evidencing the debt or the opening of the account;

(B) a bill or other record reflecting purchases, payments, or other actual use of a credit card or account by the defendant; or

(C) an electronic printout or other documentation from the original creditor establishing the existence of the account and showing purchases, payments, or other actual use of a credit card or account by the defendant.

(2) Proof of Terms and Conditions.

(A) Except as provided in subsection (d)(2)(B) of this Rule, if there was a document evidencing the terms and conditions to which the consumer debt was subject, a certified or otherwise properly authenticated photocopy or original of the document actually applicable to the consumer debt at issue shall accompany the affidavit.

(B) Subsection (d)(2)(A) of this Rule does not apply if (i) the consumer debt is an unpaid balance due on a credit card; (ii) the original creditor is or was a financial institution subject to regulation by the Federal Financial Institutions Examination Council or a constituent federal agency of that Council; and (iii) the claim does not include a demand or request for attorneys' fees or interest on the charge-off balance in excess of the Maryland Constitutional rate of six percent per annum.

40

*Committee note: This Rule is procedural only, and subsection (d)(2)(B)(iii) is not intended to address the substantive issue of whether interest in any amount may be charged on a part of the charge-off balance that, under applicable and enforceable Maryland law, may be regarded as interest.*

*Cross reference: See Federal Financial Institutions Examination Council Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903--36906 (June 12, 2000).*

(3) Proof of Plaintiff's Ownership. The affidavit shall contain a statement that the plaintiff owns the consumer debt. It shall include or be accompanied by:

(A) a chronological listing of the names of all prior owners of the debt and the date of each transfer of ownership of the debt, beginning with the name of the original creditor; and

(B) a certified or other properly authenticated copy of the bill of sale or other document that transferred ownership of the debt to each successive owner, including the plaintiff.

*Committee note: If a bill of sale or other document transferred debts in addition to the consumer debt upon which the action is based, the documentation required by subsection (d)(3)(B) of this Rule may be in the form of a redacted document that provides the general terms of the bill of sale or other document and the document's specific reference to the debt sued upon.*

(4) Identification and Nature of Debt or Account. The affidavit shall include the following information:

(A) the name of the original creditor;

(B) the full name of the defendant as it appears on the original account;

(C) the last four digits of the social security number for the defendant appearing on the original account, if known;

(D) the last four digits of the original account number; and

(E) the nature of the consumer transaction, such as utility, credit card, consumer loan, retail installment sales agreement, service, or future services.

41

(5) Future Services Contract Information. If the claim is based on a future services contract, the affidavit shall contain facts evidencing that the plaintiff currently is entitled to an award of damages under that contract.

(6) Account Charge-off Information. If there has been a charge-off of the account, the affidavit shall contain the following information:

   (A) the date of the charge-off;

   (B) the charge-off balance;

   (C) an itemization of any fees or charges claimed by the plaintiff in addition to the charge-off balance;

   (D) an itemization of all post-charge-off payments received and other credits to which the defendant is entitled; and

   (E) the date of the last payment on the consumer debt or of the last transaction giving rise to the consumer debt.

(7) Information for Debts and Accounts not Charged Off. If there has been no charge-off, the affidavit shall contain:

   (A) an itemization of all money claimed by the plaintiff, (i) including principal, interest, finance charges, service charges, late fees, and any other fees or charges added to the principal by the original creditor and, if applicable, by subsequent assignees of the consumer debt and (ii) accounting for any reduction in the amount of the claim by virtue of any payment made or other credit to which the defendant is entitled;

   (B) a statement of the amount and date of the consumer transaction giving rise to the consumer debt, or in instances of multiple transactions, the amount and date of the last transaction; and

   (C) a statement of the amount and date of the last payment on the consumer debt.

(8) Licensing Information. The affidavit shall include a list of all Maryland collection agency licenses that the plaintiff currently holds and provide the following information as to each:

42

(A) license number,

(B) name appearing on the license, and

(C) date of issue.

(e) Subsequent Proceedings.

(1) When Notice of Intention to Defend Filed. If the defendant files a timely notice of intention to defend pursuant to Rule 3-307, the plaintiff shall appear in court on the trial date prepared for a trial on the merits. If the defendant fails to appear in court on the trial date, the court may proceed as if the defendant failed to file a timely notice of intention to defend.

(2) When No Notice of Intention to Defend Filed.

(A) If the defendant fails to file a timely notice of intention to defend, the plaintiff need not appear in court on the trial date and the court may determine liability and damages on the basis of the complaint, affidavit, and supporting documents filed pursuant to this Rule. If the defendant fails to appear in court on the trial date and the court determines that the pleading and documentary evidence are sufficient to entitle the plaintiff to judgment, the court shall grant the demand for judgment on affidavit.

(B) If the court determines that the pleading and documentary evidence are insufficient to entitle the plaintiff to judgment on affidavit, the court may deny the demand for judgment on affidavit or may grant a continuance to permit the plaintiff to supplement the documentary evidence filed with the demand. If the defendant appears in court at the time set for trial and it is established to the court's satisfaction that the defendant may have a meritorious defense, the court shall deny the demand for judgment on affidavit. If the demand for judgment on affidavit is denied or the court grants a continuance pursuant to this section, the clerk shall set a new trial date and mail notice of the reassignment to the parties, unless the plaintiff is in court and requests the court to proceed with trial.

(f) Reduction in Amount of Damages. Before entry of judgment, the plaintiff shall inform the court of any reduction in the amount of the claim by virtue of any payment or other credit.

(g) Notice of Judgment on Affidavit. When a demand for judgment on affidavit is granted, the clerk shall mail notice of the judgment promptly after its entry to each party at the latest address stated in the pleadings. The notice shall inform (1) the plaintiff of the right to obtain a lien on real property pursuant to Rule 3-621, and (2) the defendant of the right to file a motion to vacate the judgment within 30 days after its entry pursuant to Rule 3-535 (a). The clerk shall ensure that the docket or file reflects compliance with this section.